IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| FIRST NIAGARA RISK MANAGEMENT, INC. | : : : | CIVIL ACTION |
| v. | : : | |
| JOHN A. FOLINO | : | NO. 16-1779 |

MEMORANDUM

Dalzell, J.                                                                                                                               August 11, 2016

## I.    Introduction

We consider here competing motions regarding the scope of discovery in this matter. Plaintiff First Niagara Risk Management, Inc. ("First Niagara") brings this action against defendant John A. Folino alleging, among other things, breach of contract and breach of fiduciary duty.

We have diversity jurisdiction over these claims pursuant to 28 U.S.C. § 1332.

First Niagara moves to compel Folino to produce materials pursuant to discovery requests it made after the parties agreed to a Stipulated Preliminary Injunction. Additionally, First Niagara seeks to recover the costs associated with having to file this motion. Folino opposes plaintiff's motion and moves for a protective order and to disqualify the e-discovery vendor.

For the reasons set forth below, we will grant First Niagara's motion to compel, but deny the accompanying request for costs and fees, deny Folino's motion to disqualify the e-discovery vendor, and deny Folino's motion for a protective order.

## II.     Legal Standard

Fed. R. Civ. P. 26 (b)(1) defines the scope of discovery as "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case..."  When determining the proper scope of discovery, courts must consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  Id.  A party moving to compel discovery pursuant to Fed. R. Civ. P. 37 bears the initial burden of proving the relevance of the material requested.  See Morrison v. Philadelphia Housing Authority, 203 F.R.D. 195, 196 (E.D. Pa. 2001).  If the moving party meets this burden, the party resisting discovery can establish a lack of relevance by showing that the material requested does not fall within the broad scope of relevance defined by Rule 26 or is of such little relevance that the potential harm occasioned by discovery outweighs the ordinary presumption favoring its disclosure.  See In re Urethane Antitrust Litig., 261 F.R.D. 570, 573 (D. Kan. 2009).

## III.     Factual and Procedural Background

This case concerns a consequential dispute between an employer and a former employee.  First Niagara brings this suit against John Folino, who until recently served as plaintiff's First Vice-President and Regional Director of Insurance for Western Pennsylvania.  See Employment Agreement, Compl. at Ex. 1.  Folino assumed this role in 2010 after First Niagara purchased most of the assets of two businesses that Folino owned for an initial $5,000,000 payment.  Compl. at ¶ 8.  Folino owned a third company, RTI Insurance Services of Florida ("RTI"), that First Niagara did not purchase.  The Employment Agreement Folino signed in conjunction with the sale of his businesses contained non-solicitation and non-compete provisions that barred

2

Folino from either soliciting the services of, or employing, First Niagara employees for any other businesses, competing with First Niagara for clients, or diverting existing or potential customers from First Niagara to a competing business.  Employment Agreement at 5-6.

In 2015, while still working at First Niagara, the record evidence shows that Folino worked with another First Niagara employee, Thomas Kolongowski, to start a company called Trident Risk Advisors ("Trident") which would compete directly with First Niagara.  Evidence of Folino's involvement in this competing venture, even at this early stage of the litigation, is mountainous.  We feel compelled to go over this evidence in great detail, something we would normally avoid when resolving a discovery dispute, because Folino has averred that First Niagara, in its motion, "persists in the same misleading portrayal of events that appears in its Complaint, its Motion for Preliminary Injunction, and repeatedly in filings in a separate action."  Resp. Opp'n Mot. at 1-2.  Thus, we find it only fair to the parties to recite the facts as evidenced by the record already created in this matter.

In September of 2015, Kolongowski emailed Folino noting that "[i]t was great to see you down in Sumterville, Florida with Cary Cohrs and Paul Rivera."  See Resp. Opp'n Mot. Prot. Order at Ex. A.  Paul Rivera's email signature indicates that he is an account manager at RTI.  Folino later responded to an email from Kolongowski on November 25, 2015, discussing Trident's branding and marketing efforts, and Kolongowski's September email had stated that the new company had purchased the domain name tridentriskadvisors.com.  See Reply in Supp. of Mot. at Ex. E.  A week after his November 25 email, Folino responded to an email from Kolongowski regarding the "first fee payment for the *Trident Risk Advisors* Brand Development Package."  Id. (emphasis in original).  An email from December 31, 2015 details a discussion between Kolongowski and Folino regarding an offer of employment for one Gilbert Nassib.  Id.

3

Kolongowski sent the original email with his signature line reading "Trident Risk Advisors, LLC." Folino responded to another one of Kolongowski's emails on January 10, 2016 that talked about an equipment order, with Folino telling Kolongowski to "[c]ontact Rae this week to finalize order. Call if you need anything, the team is ready!!" Id. On January 18, 2016, Kolongowski sent an email to Folino and others with a "brief update of Trident related logistics." Id. On January 26, 2016, Folino sent an email to Kolongowski regarding signed employment contracts in an email entitled "RE: Trident – Employment Agreement." Id. That same day, Folino forwarded Kolongowski an email with the subject line "Outline of Trident Financial Services." Id. An email from February 2, 2016 that Kolongowski forwarded to Folino asked Folino to sign a Canon copier credit application since he was the majority owner of Trident. Id. On February 10, 2016, Kolongowski sent another email to Folino and others entitled "Trident Risk Advisors Update." Id. It appears that all of these emails were sent to and from Folino's personal Gmail account.

In a similar vein, Folino was also named as a Member of Trident on a draft employment agreement between Kolongowski and one Adrian Mills. Resp. Supp. Mot. at Ex. F. In that document, Folino was identified as "Chief Executive of Managing Member, 691 Investments, LLC." Trident's Limited Liability Company Operating Agreement lists 691 Investments, LLC, as the majority shareholder. Id.

First Niagara only learned of Folino's involvement in these other ventures after bringing a separate case against Kolongowski, which is also before this court. It then brought this action against Folino on April 14, 2016, asserting claims for breach of contract, breach of fiduciary duty, breach of implied duty of good faith and fair dealing, tortious interference with contract, civil conspiracy to obstruct justice, and misappropriation of trade secrets. The same day it filed

its complaint, First Niagara also filed motions for a preliminary injunction and a temporary restraining order.  See Mot. at docket entry # 3.  We denied the motion for a temporary restraining order, see Order, Apr. 15, 2016 at docket entry # 5, and, after a hearing on April 21, 2016, the parties agreed to a Stipulated Preliminary Injunction which we approved.  See Stipulation and Order, docket entry # 17.  The parties agreed in this Stipulated Preliminary Injunction that Folino would make available for imaging all of his personal and business electronic devices, and that Eqip eDiscovery Solutions ("Eqip"), an "independent third party forensic discovery company," could conduct forensic imaging of Folino's devices using a list of key words and search terms.  Id. at ¶ 3.

      But Folino and First Niagara disagreed about the scope of discovery almost immediately after we approved the Stipulated Preliminary Injunction.  First Niagara now moves to compel Folino to allow for a broad search of his electronic devices -- including emails and text messages.  Folino objects to First Niagara's proposed terms and date range for its electronic discovery search request as being overly broad and invasive, and argues that his own proposed electronically-stored information search protocol is "more than adequately tailored to [First Niagara]'s pleaded allegations and set forth a proposed scope of discovery that is consistent with what [First Niagara] is entitled under the Federal Rules."  Resp. Opp'n Mot. at 2.

      Folino also alleges that Eqip breached its duty of independence when it partook in ex parte communications with First Niagara.  Folino's counsel in turn requested that Eqip:

> reaffirm its contractual obligation of independence by: (a) identifying the employees working on the imaging and examination of Folino's devices; (b) identifying the employees working on the imaging and examination of Kolongowski's devices; (c) acknowledging that employees working on the Folino case will not have ex parte communications during the data collection stage of Eqip's engagement; and (d) describing the

5

> procedures put in place to assure no commingling of data and staff assigned to the Kolongowski and Folino engagements.

See Resp. Opp'n Mot. at 10 and Ex. E.  Folino was dissatisfied with Eqip's response to his request, wherein the company reaffirmed its independence and stated that the employee in question who had spoken with First Niagara was not working on the Folino case.  See Resp. Opp'n Mot. at Ex. F.  Folino further asserts that Equip compromised the email security of his private email by lowering the security settings on his Gmail account.  Id. at 19.  He therefore moves to disqualify the use of Eqip as the e-discovery vendor.

Finally, Folino moves for a protective order that shields him from First Niagara's attempts to obtain discovery on any matters outside the scope of Folino's relationships with First Niagara and Trident.  Specifically, Folino does not believe that any material related to his work with RTI is relevant to this litigation.  He supports his request by noting that First Niagara "has not produced one scintilla of evidence that [he] diverted any business to RTI while he was a [First Niagara] employee…"  Mot. for Prot. Order at 4.  First Niagara opposes this motion, stating that at least one employee of RTI, Paul Rivera, helped Folino and Kolongowski set up Trident.  Resp. Opp'n Mot. Prot. Order at 4.

**IV.    Discussion**

We will consider separately First Niagara's motion to compel and request for fees, Folino's motion to disqualify the e-discovery vendor, and Folino's motion for a protective order.

    **A.    First Niagara's Motion To Compel and Request For Fees**

First Niagara moves to compel Folino to allow Eqip to search his personal electronic devices and personal email accounts using the following search criteria:

6

- All emails, texts, and text chains containing one of the following search terms:
    - Tek86@comcast.net
    - robertjacomen@gmail.com
    - gpnassib@gmail.com
    - Ace08055@gmail.com
    - Jcgacg13@yahoo.com
    - todd@novellifinanccil.com[1]
    - paul@trustrti.com
    - john@trustrti.com
    - Trident
    - Radnor
    - Kolongowski or Tom!
    - Jacomen or Robert!
    - Gil! Or Nassib!
    - Adrian! Or Miles
    - April! Or Giumento!
    - Dwyer!
    - Jim or James or Bell
    - FNRM or "First Niagara"
    - Cary or Cohrs
    - "American Cement"
    - Lehigh
    - Castle
    - The names of 78 clients, and variations of those names, in Folino's book of business with First Niagara
    - RTI
    - Weitzel or Rae

- Date Range: January 1, 2014 to April 27, 2016

We agree with Folino that this request is rather broad. But, after analyzing the factors set out in Rule 26(b)(1), we find that First Niagara's request is proportional to the needs of this case.

As we stated earlier, the recent amendment to Fed. R. Civ. P. 26 requires courts to consider the following factors when defining the scope of discovery: (1) the importance of the issues at stake, (2) the amount in controversy, (3) the parties' relative access to information, (4) the parties' resources, (5) the importance of discovery in resolving the issues, and (6) whether the burden or expense of discovery outweighs its likely benefits. This amendment "restores the

---

[1] This looks like a typo to our untrained eyes, but this email address was consistent throughout the briefings.

proportionality factors to their original place in defining the scope of discovery [and] reinforces the [Rule's] obligation of the parties to consider these factors in making discovery requests, responses or objections."  See Fed. R. Civ. P. 26, Advisory Committee's Note to 2015 Amendment.  But the Rule does not "change the existing responsibilities of the court and the parties to consider proportionality," id., nor does it "alter the burdens imposed on the party resisting discovery."  Curtis v. Metropolitan Life Ins. Co., No. 15-2328, 2016 WL 687164, at *3 (N.D. Tex. Feb. 19, 2016).

Again, the burden is on First Niagara to show that the material it requests is relevant to its claims, and, if that burden is met, Folino must show that the factors in Rule 26 weigh in favor of our denying First Niagara's request for otherwise relevant information.  See, e.g., Fed. R. Civ. P. 37, Morrison, 203 F.R.D. at 196, and In re Urethane Antitrust Litig., 261 F.R.D. at 573.

The material requested by First Niagara is relevant here.  Limited discovery in this matter has so far revealed significant evidence that Folino was more than likely involved in the formation of Trident and the recruitment of First Niagara employees to join this new company, actions that would be a breach of the non-compete and non-solicitation provisions contained in his Employment Agreement with First Niagara.  Moreover, there is also evidence that at least one employee from RTI helped in the formation of Trident.  We therefore find that the material requested by First Niagara is relevant to their breach of contract, breach of fiduciary duty, tortious interference, and other claims in this matter.

Folino counters by stating that the request is overly-broad, costly, and burdensome.  To analyze his defense we again use the factors from the recently-amended Rule 26.  The issues at stake are of grave importance to First Niagara, who has allegedly uncovered a plan by one of its top executives to start a competing business and employing former First Niagara employees.

The first factor therefore weighs in favor of granting First Niagara's motion. The amount in controversy is unknown at this time, so the second factor weighs in favor of Folino, who avers that unknown damages cannot justify exorbitant discovery requests. Folino has access to the information on his emails and text messages while First Niagara does not, so the third factor weights in favor of First Niagara. The parties' resources weigh in favor of neither party because, while First Niagara is a corporation and Folino is an individual, his complaints about costs ring hollow from someone who just sold two companies for over $5 million. The importance of discovery in resolving the issues in this case weighs heavily in favor of First Niagara, who needs to conduct broad discovery to uncover the scope of Folino's alleged misdeeds. Finally, as to the sixth factor, the burden or expense of discovery for Folino, which is substantial, does not outweigh the benefit of discovery for First Niagara, who, again, has uncovered evidence that one of its top executives may have started a competing company while under its employ. Weighing these factors makes clear that the potential harm First Niagara's discovery requests may impose on Folino does not outweigh the presumption for disclosure of those requests.

   Folino relies on the guiding principles established by the Sedona Conference on eDiscovery which were published in 2003. He notes that the Sedona principles state that the responding party is presumed to be in the best position to choose an appropriate method of searching and culling data, see <u>Ford Motor Co. v. Edgewood Props., Inc.</u>, 257 F.R.D. 418, 427 (D.N.J. 2009), and that the burden is on the requesting party to prove that the responding party's search methods are inadequate. <u>See</u> Sedona Principle 7 and <u>Eurand Inc. v. Mylan Pharm., Inc.</u>, 266 F.R.D. 79, 85 (D. Del. 2010). First, we note that these principles are not binding on us -- while Fed. R. Civ. P. 26 and 37 most certainly are -- and thus the Federal Rules are the proper analytical tool for this endeavor. Second, even using the Sedona principles cited by Folino, his

defense fails. The record evidence has already shown that Folino's proposed protocol is inadequate. Folino cannot seek to limit searches of his work to First Niagara, since it is precisely his work with other companies that is the basis for the claims First Niagara brings against him. And his proposed search range -- October 1, 2015 to April 27, 2016 -- excludes a time period before October of 2015 where the record shows that Folino was already working with Kolongowski and others to form a new venture which would later become Trident.

First Niagara has shown that the material it requests is relevant under Rule 26, and Folino's defenses under both the Rule 26 proportionality factors and the non-binding Sedona principles fail. We will therefore grant First Niagara's motion to compel.

We must next consider whether to grant First Niagara's request for fees and costs associated with its motion to compel. Fed. R. Civ. P. 37 (a)(5)(A) states that a court must order payment for "reasonable expenses incurred in making the motion, including attorney's fees," if a motion to compel is granted. But the Rule goes on to state that the court must not order payment if "(i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust." Id. We find that Folino's nondisclosure and objections, while ultimately futile, were substantially justified given the breadth of First Niagara's request. While we do not begrudge First Niagara's broad discovery request, we understand how Folino could have interpreted such a request as overly broad, expensive, and burdensome, even if we do not agree with that interpretation. We will therefore deny First Niagara's request for fees and costs associated with its successful motion to compel.

     **B.**    <u>**Folino's Motion to Disqualify the E-Discovery Vendor**</u>

Folino separately moves to disqualify the e-discovery vendor, Eqip, alleging that Eqip breached its duty of independence and its agreement with the parties when it had <u>ex parte</u> communications with First Niagara. Federal courts have the authority to disqualify a consultant from a case in order to "protect the integrity of the adversary process and to promote the public confidence in the legal system." <u>Greene, Tweed of Delaware, Inc. v. DuPont Dow Elastomers, L.L.C.</u>, 202 F.R.D. 426, 428 (E.D. Pa. 2001). A court may disqualify a consultant if that consultant previously worked for an adversary in the litigation and, in turn, acquired confidential information while performing that work. <u>Id.</u> (citing <u>Wang Labs, Inc. v. Toshiba Corp.</u>, 762 F. Supp. 1246, 1248 (E.D. Va. 1991). Our colleague Judge Welsh has laid out a two-part inquiry for deciding whether to disqualify an expert witness, asking "(1) Did the adversary…have a confidential relationship with the expert?; and (2) Did the adversary disclose confidential or privileged information to the expert that is relevant to the current litigation?" <u>Greene, Tweed of Delaware, Inc.</u> 202 F.R.D. at 428-29. We, in turn, find this inquiry would apply when deciding whether to disqualify a third-party consultant, in this instance Eqip, from a case.

Here, Folino seeks to disqualify the e-discovery vendor that he consented to use for this litigation when he agreed to the Stipulated Preliminary Injunction. He now claims that Eqip has violated its duty of independence, alleging that one of its employees participated in a conference call with First Niagara that amounted to <u>ex parte</u> communication, and that Eqip's "secrecy" regarding its processes meant that "it can only be assumed that Eqip is violating the neutrality provisions upon which its engagement was conditioned." Resp. Opp'n Mot. at 18. This is quite the assumption to make given that Eqip assured Folino that the employee in question was not working on his case and had only performed forensic imaging on the Kolongowski matter.

11

Moreover, and more damning to Folino's request, Folino offers no evidence that Equip has disclosed confidential or privileged information to First Niagara that is relevant to this litigation.[2] We will therefore deny Folino's motion to disqualify Eqip as the e-discovery vendor.

        C.      **<u>Folino's Motion for a Protective Order</u>**

Folino next moves for a protective order to shield him from First Niagara's discovery requests regarding his other business ventures that, as Folino writes, "do[] not relate to [Folino]'s relationships with customers or employees of [First Niagara] or…Trident Risk Advisors," -- more specifically, information pertaining to his work with RTI. Mot. Prot. Order. Parties may move for a protective order pursuant to Fed. R. Civ. P. 26(c), but parties must show good cause for a Court to enter one. See <u>Pansy v. Borough of Stroudsburg</u>, 23 F.3d 772, 786 (3d Cir. 1994). Our Court of Appeals has identified seven factors to consider when determining whether to issue a protective order. They are:

> (1) whether disclosure will violate any privacy interests; (2) whether the information is being sought for a legitimate purpose or for an improper purpose; (3) whether disclosure of the information will cause a party embarrassment; (4) whether confidentiality is being sought over information important to public health and safety; (5) whether the sharing of information among litigants will promote fairness and efficiency; (6) whether a party benefitting from the order of confidentiality is a public entity or official; and (7) whether the case involves issues important to the public.

<u>Glenmede</u>, 56 F.3d at 483 (citing <u>Pansy</u>, 23 F.3d at 787-91). Considering these factors, we find that Folino's motion lacks merit. Folino does not have a privacy interest in shielding himself from First Niagara's requests about his other business interests, especially when his involvement with those interests may have been a violation of his Employment Agreement. The information on Folino's other businesses is sought for a legitimate purpose – that is, whether Folino breached

---

[2] While it is troubling that Eqip allegedly lowered the settings on Folino's Gmail account without notifying him, such conduct is not grounds to disqualify Eqip from this case.

the provisions of his Employment Agreement.  These first two points are especially pertinent when the record already contains evidence that Folino was working with at least one RTI employee in the early stages of forming Trident.

Moreover, there is no evidence that these disclosures will cause Folino embarrassment or that they are important to public health and safety.  The sharing of information among these litigants promotes fairness (if not efficiency), as it allows First Niagara to develop its claims.  Folino is not a public entity or official, but the case does involve issues important to the public -- namely, the enforcement of valid contracts.  The factors outlined by our Court of Appeals in Glenmede overwhelmingly support disclosure in this matter, and we will therefore deny Folino's motion.

**V.     Conclusion**

While we generally expect parties to resolve discovery disputes on their own, there are times such as these where the Court must intervene.  Folino's concerns regarding the scope of First Niagara's discovery requests are unfounded.  We will grant First Niagara's motion to compel, deny Folino's motion to disqualify the e-discovery vendor, and deny Folino's motion for a protective order.  An appropriate Order follows.

BY THE COURT:

/s/ Stewart Dalzell, J.
Stewart Dalzell, J.

14